UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH FELICE AND PATRICIA SCLAFANI,<br><br>     Plaintiffs,<br>vs.<br><br>THE CITY OF NEW YORK, et al.<br><br>     Defendants. | Civil Action No. 15-CV-5842 (AKH)(BCM) |

**PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO AMEND COMPLAINT**

NEWMAN FERRARA LLP

Debra S. Cohen
dcohen@nfllp.com
Randolph M. McLaughlin
rmclaughlin@nfllp.com
1250 Broadway, 27th Floor
New York, New York 10001
Tel: 212-619-5400
Fax: 212-619-3090

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ......................................................................................... 1
FACTUAL STATEMENT .................................................................................................. 1
ARGUMENT ....................................................................................................................... 2
   I.   DEFENDANTS IDENTIFIED LT. BROWN AND SGT. SIMONETTI AS POLICE OFFICER CRONIN'S TRAINING SUPERVISORS ................................................. 2
   II.   DEFENDANTS APPLY THE WRONG LEGAL STANDARD FOR SUPERVISORY LIABILITY ................................................................................................................. 5
   III.   PLAINTIFFS HAVE PLED SUFFICIENT FACTS TO SUPPORT A CLAIM FOR SUPERVISORY LIABILITY AGAINST LT. BROWN AND SGT. SIMONETTI UNDER THE CORRECT LEGAL STANDARD ................................................................... 6
   IV.   PLAINTIFFS ARE ENTITLED TO SUPPLEMENTAL DISCOVERY OF ANY OTHER EVIDENCE SUPPORTING SUPERVISORY LIABILITY ........................ 8
CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Colon v. Coughlin,* 58 F.3d 865 (2d Cir.1995). .................................................................. 6

*Jean-Laurent v. Wilkerson*, 438 F Supp. 2d 318 (S.D.N.Y. 2006), *aff'd*, 461 Fed. Appx. 18 (2d Cir. 2012) ........................................................................................................... 6

*Pena v. DePrisco*, 432 F3d 98 (2d Cir. 2005). ................................................................... 7

*Sauer v. Connelie*, 419 N.Y.S.2d 301 (App. Div. 3d Dep't 1979). .................................... 4

*Seelig v. Koehler*, 556 N.E.2d 125 (N.Y. 1990). ............................................................... 4

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602 (1989) ........................................... 4

# PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Reply to Defendants' Memorandum of Law in opposition to Plaintiffs' motion to file an amended complaint. Defendants do not object to the proposed additions of POs Bracconeri, Concannon and Griffin as defendants. These proposed defendants participated with Defendants Cronin and Ching in training exercises at Rodman's Neck, the NYPD's then training facility, on April 28 and 29, 2014. Defendants oppose only the addition of Lt. Kevin Brown and Sgt. Joseph Simonetti, who were identified by the Defendants in a Rule 26(a) Supplemental Disclosure dated May 20, 2016 as supervisors of the High Intensity Drug Trafficking Areas ("HIDTA") training received by Defendant Cronin, and the other individual defendants named in the Amended Complaint. Defendants acknowledge in the 26(a) Supplemental Disclosure that proposed Defendants Brown and Simonetti not only supervised the HIDTA training but "observed and/or interacted" with Defendant Cronin. It is undisputed that Defendants Cronin, Ching, Bracconeri, Concannon and Griffin consumed alcohol during their lunch break on April 29, 2016, in violation of NYPD regulations, returned to Rodman's Neck and continued their training under the supervision of Defendants Brown and Simonetti.

# FACTUAL STATEMENT

Plaintiffs set forth herein facts relevant to this motion as alleged in the proposed Amended Complaint. On April 29, 2014, Lt. Brown and Sgt. Simonetti supervised the day-long training at the NYPD's Rodman's Neck facility in which PO Brendan Cronin, PO Ryan Bracconeri, PO William Concannon, PO Jeffrey Griffin, and Sgt. Edwin Ching participated. Upon being released for lunch at 1:00 p.m., PO Cronin, PO Bracconeri, PO Concannon and Sgt. Ching went to the Alehouse at nearby City Island. During their lunch break they each consumed at least one alcoholic beverage before returning to the facility to complete their training. Lt.

1

Brown and Sgt. Simonetti were responsible for conducting and supervising the training that afternoon. After being released early from training, PO Cronin, PO Bracconeri and Sgt. Ching returned to the Alehouse and proceeded to drink to excess. Defendant Cronin has publicly stated he consumed at least 10 drinks consisting of both beer and whiskey shots. PO Cronin left Alehouse at the same time as Defendants Ching and Bracconeri. While driving home, he pulled off the highway and parked his car along a roadway in Pelham, N.Y. After approximately one hour he exited his vehicle and stood in the yard of a house located on the corner. When Robert Borrelli, driving with Plaintiff Joseph Felice as his passenger, stopped his car at the red light located at this corner, PO Cronin stepped from the shadows, walked quickly to the passenger door on the drivers side of Mr. Borrelli's vehicle, removed his service weapon from a duffel bag on the back seat, assumed a shooters stance and emptied his clip into Mr. Borrelli's car. Plaintiff Joseph Felice, sitting in the front passenger seat, was struck six times and gravely wounded. When PO Cronin's clip was empty, and the shooting had stopped, Mr. Borrelli drove off and rushed Plaintiff Joseph Felice to a nearby hospital, where his wife, Patricia Sclafani, witnessed her husband suffer massive blood loss and undergo surgical procedures. PO Cronin was arrested shortly thereafter and eventually pled guilty to two counts of attempted murder in the second degree, two counts of assault in the first degree, one count of driving while intoxicated as a misdemeanor, and was sentenced to nine years in prison.

## ARGUMENT

### I. DEFENDANTS IDENTIFIED LT. BROWN AND SGT. SIMONETTI AS POLICE OFFICER CRONIN'S TRAINING SUPERVISORS

Defendants claim that Plaintiffs have failed to plead sufficient facts to assert a claim of supervisory liability against Lieutenant Brown and Sergeant Simonetti. Defendants set forth that "Neither Lt. Brown nor Sgt. Simonetti was PO Cronin's supervisor, but rather were training

supervisors at the Rodman's Neck facility." Defendants' MOL, p. 5. However, Defendants are opposing their own language, as Defendants identified in their Rule 26(a) Disclosures both Lt. Brown and Sgt. Simonetti as: "supervisor[s] of the HIDTA training received by PO Cronin, [who] observed and/or interacted with him during the HIDTA training, and [are] familiar with training generally at the Rodman's Neck training facility." Defendant City's First Supplemental Disclosures Pursuant to FRCP 26(a) ¶ i.

Defendants have specifically set forth that Lt. Brown and Sgt. Simonetti interacted and/or observed PO Cronin during the HIDTA training on April 29, 2014. Indeed, Lt. Brown and Sgt. Simonetti were the supervisors who oversaw the activities of Officers Cronin, Bracconeri, Griffin and Concannon, and Sgt. Ching, after returning from their hour and fifteen minute lunch, where all of these individuals admittedly consumed alcohol. Further, as the supervisors of the training that day, Lt. Brown and Sgt. Simonetti were responsible for letting the officers out early from training on the day of the incident as stated by PO Cronin in his interview with a Pelham Police Department detective. Felice Proposed AC, ¶ 102. This resulted in PO Cronin, PO Bracconeri and Sgt. Ching returning to the Alehouse to continue drinking while still on duty. Thus, Defendants are incorrect in stating: "[Lt. Brown and Sgt. Simonetti] were not present for any of the wrongdoing cited in the proposed amended complaint," "[Lt. Brown and Sgt. Simonetti] had absolutely no responsibility for what he [PO Cronin] did on his lunch break," and "it was absolutely not their responsibility" to be aware of whether PO Cronin consumed alcohol during the tour of duty spent undergoing their training. Defendants' MOL, p. 5-6. These statements belie the fact that as supervisors of the Defendants' tour of duty, Lt. Brown and Sgt. Simonetti had the responsibility of ensuring that officers under their supervision did not consume alcohol while on duty, including when released from training prior to the end of their shifts.

Defendants vastly underestimate the level of responsibility placed upon proposed Defendants Lt. Brown and Sgt. Simonetti as supervisors of the day-long training PO Cronin underwent shortly before drunkenly shooting a civilian. Courts have consistently recognized the strong public interest in supervisors ensuring that subordinate officers are fit for duty: "Decisions have repeatedly held that the position of [police officers] is one of great sensitivity and trust…and that higher standards are properly expected of police officers with regard to discipline, fitness and character than pertain to ordinary civil service employees." *Sauer v. Connelie*, 419 N.Y.S.2d 301, 302 (App. Div. 3d Dep't 1979). As such, society is "unquestionably entitled to [an officer's] undeviating concentration and split-second good judgment and self-control." *Seelig v. Koehler*, 556 N.E.2d 125, 128 (N.Y. 1990). This public interest "plainly justifies prohibiting [officers] from using alcohol or drugs on duty, or while subject to being called for duty. This interest also <u>requires and justifies the exercise of supervision to assure that the restrictions are in fact observed</u>." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 621 (1989)(internal quotations and citations omitted)(emphasis added).

Members of the NYPD are prohibited from consuming alcohol while on duty. Additionally, the Patrol Guide sets forth that "Fitness for Duty" mandates members of the service to: "Be fit for duty at all times, except when on sick report," and "Do not consume intoxicants to the extent that member becomes unfit for duty." Patrol Guide Procedure No. 203-04, "Fitness For Duty". The Patrol Guide also sets forth that Supervisors must report violations they observe. Patrol Guide Procedure No. 206-01, "Reporting Violations Observed by Supervisors". Specifically, the Patrol Guide states that "Upon observing or becoming aware of a violation of the rules or procedures by a member of the service: Supervisory Member must prepare Supervisor's Complaint Report/Command Discipline Election Report; Notify desk

4

officer of member's command and obtain next serial number from the Command Discipline Log; Make required entries in Command Discipline Log; Submit report to the commanding officer of the subject member; and Provide a copy of report to commanding officer for information and file if subject member is from different command." *Id.*

During the OCCB/HIDTA Tactical Course on April 29, 2014, the students were to participate in role play and simulations, including demonstrating the techniques that will be utilized by members of service while conducting a five man vehicle takedown with two vehicles based on instructor demonstration. Throughout the training, the students were working within very close quarters with their supervisors, therefore leaving Lt. Brown and Sgt. Simonetti in close proximity to PO Cronin and the other Defendants who drank alcohol with PO Cronin during lunch. There is ample evidence that Lt. Brown and Sgt. Simonetti knew, or should have known, that PO Cronin and the other officers consumed alcohol during their lunch break at the Alehouse. Lt. Brown and Sgt. Simonetti had a duty to be aware of the state of mind and fitness for duty of their trainees throughout the entirety of the trainings. Yet, upon information and belief, they neglected to address the on duty alcohol consumption of officers under their supervision and/or take any steps to report that they could detect the smell of alcohol on PO Cronin and the other officers' breath during the training.

## II. DEFENDANTS APPLY THE WRONG LEGAL STANDARD FOR SUPERVISORY LIABILITY

In their Memorandum of Law in Opposition to Motion to Amend Complaint, Defendants incorrectly cite to the standard relevant to claims for failure to intervene in arguing that Plaintiffs have failed to sufficiently allege facts supporting supervisory liability. Defendants' MOL, p. 4. Contrary to Defendants' assertions, Plaintiffs have sufficiently alleged personal involvement of

proposed Defendants Brown and Simonetti. To assert a claim for supervisory liability Plaintiff must allege facts that demonstrate the supervisor defendants either:

> (1) directly participated in the violation; (2) failed to remedy the wrong after it comes to his attention; (3) creating a policy or custom under which unconstitutional practices occur, or allowing the continuation of such custom and policy; (4) being grossly negligent in supervising subordinates who committed the wrongful acts; or (5) failing to act on information indicating that unconstitutional acts are occurring.

*Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006), *aff'd*, 461 Fed. Appx. 18 (2d Cir. 2012); *see also Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

### III. PLAINTIFFS HAVE PLED SUFFICIENT FACTS TO SUPPORT A CLAIM FOR SUPERVISORY LIABILITY AGAINST LT. BROWN AND SGT. SIMONETTI UNDER THE CORRECT LEGAL STANDARD

Plaintiffs allege that Lt. Brown and Sgt. Simonetti were in close quarters with the officers they were training on the day of the incident, such that by using their senses they could have or should have detected alcohol on the officers' breath. On April 29, 2014, PO Cronin and the other defendants underwent a strenuous training under the supervision of the proposed Defendants. Lt. Brown and Sgt. Simonetti dismissed the officers for lunch at 1:00 p.m. At around 2:15 p.m., after each consuming at least one alcoholic beverage, PO Cronin and the other Defendants returned to continue training in close quarters with the proposed Defendants. There is no dispute that Defendants were drinking on duty. Officers Bracconeri, Ching, Concannon and Griffin all admit to having at least one alcoholic drink during the lunch break, and all except PO Concannon admit to having witnessed PO Cronin drinking during lunch. Felice Proposed AC, ¶¶ 9, 100, 101. Based on these admissions by the officers, it is reasonable to conclude that Lt. Brown and Sgt. Simonetti could detect alcohol on the officers' breath during the afternoon segment of the training, but said and did nothing about it.

If proven, Plaintiffs' allegations that Lt. Brown and Sgt. Simonetti were, or should have been, aware of PO Cronin's drinking and failed to address it support a finding of supervisory liability. Their inaction could reasonably be deemed as implicitly condoning a disregard for NYPD regulations prohibiting excessive consumption of alcohol by officers on and off duty. In *Pena v. DePrisco*, the Second Circuit refused to dismiss claims against supervisory officers who implicitly condoned an off-duty subordinate's intoxicated driving. *Pena v. DePrisco*, 432 F.3d 98, 111 (2d Cir. 2005). The court held that:

> To the extent that … supervisors … condoned [the police officer's] behavior…it could be inferred by a reasonable juror that those defendants, by their actions, implicitly but affirmatively condoned [the police officer's] behavior and indicated to [him] that he would not be disciplined for his conduct…[When] state officials communicate to a private person that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct.

*Id.* By failing to discipline the officers who were drinking during lunch, Lt. Brown and Sgt. Simonetti implicitly condoned their behavior despite the likelihood that the consumption of intoxicants by police officers during a tour of duty could endanger the officers and the public.

As elucidated by the numerous lawsuits cited in the Complaint involving intoxicated NYPD officers, Plaintiffs have alleged a longstanding pattern of alcohol abuse by the NYPD resulting in constitutional violations. Felice Compl., ¶¶ 107-108. The NYPD itself admits the serious problem with alcohol abuse in its training manual for recruits, which warns that if an officer gets into a drunk driving accident, he will become "just another statistic, one more of one too many cases in which New York City police officers have injured or killed innocent people while drunk." Felice Proposed AC, ¶¶ 87, 88. The manual indicates that the NYPD considers alcohol use to be a typical stage of alcoholism among police officers when "[t]he officer begins to drink before his shift and perhaps on his meal break," and yet Lt. Brown and Sgt. Simonetti

7

failed to take any action when multiple subordinates returned from their lunch break allegedly smelling of alcohol. Felice Proposed AC, ¶¶ 9, 144.

The NYPD's culture of implicit approval of the consumption of alcohol during trainings is perfectly demonstrated by a police official's question during a recorded interview of PO Bracconeri, when he was asked whether he knew if anybody brought a cooler to the range that day. The police official then clarified his question by saying that "normally guys go to the range, they bring a cooler of cold ones so they can have a couple of cold ones in the lot." In the context of the prior lawsuits cited in Plaintiffs' Complaint, at the very least, the evidence that tailgating is a *normal* occurrence at the Rodman's Neck facility demonstrates that Lt. Brown and Sgt. Simonetti's failure to take any action with regards to the officers' lunchtime drinking allowed the continuation of a custom under which unconstitutional practices occur. Further discovery will likely uncover additional evidence that, by showing that there would be no consequences for such behavior, the proposed Defendants implicitly condoned drinking by officers under their supervision.

## IV. PLAINTIFFS ARE ENTITLED TO SUPPLEMENTAL DISCOVERY OF ANY OTHER EVIDENCE SUPPORTING SUPERVISORY LIABILITY

At this stage of the proceedings, Plaintiffs are entitled to proceed with discovery regarding other evidence of alcohol consumption during tours of duty at Rodman's Neck. Plaintiffs intend to explore a report that, on information and belief, at least one of the trainers observed Police Officers Cronin, Bracconeri, Griffin, Concannon, and Sgt. Ching drinking at the Alehouse during lunch.

Plaintiffs respectfully ask the Court to recognize the roles and responsibilities of Lt. Brown and Sgt. Simonetti with regard to their supervision of the officers who consumed alcohol during their tour of duty on April 29, 2014. Plaintiffs seek to add Lt. Brown and Sgt. Simonetti

as Defendants to fully encompass the individuals responsible for condoning and encouraging the officers' drinking throughout the day on April 29, 2014, which led to the tragedy that ensued that evening.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend the complaint to add the proposed Defendants Lt. Brown and Sgt. Simonetti should be granted.

Dated: July 12, 2016
New York, New York

**NEWMAN FERRARA LLP**

By: /s/ Debra S. Cohen
Debra S. Cohen
dcohen@nfllp.com
Randolph M. McLaughlin
rmclaughlin@nfllp.com
1250 Broadway, 27th Floor
New York, New York 10001
Tel: 212-619-5400
Fax: 212-619-3090

STOLZENBERG CORTELLI LLP
Howard B. Stolzenberg, Esq.
hstolzenberg@stolzcortlaw.com
Terrence J. Cortelli, Esq.
tcortelli@stolzcortlaw.com
305 Old Tarrytown Road
White Plains, NY 10603
Tel: 914-361-4888